**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Terry Kveen, as Trustee of the Terry G. and Carol L. Kveen Revocable Trust, and Norman Kveen, as Trustee of the Kveen Joint Revocable Trust, | Court File No.  24-cv-02494 |
| Plaintiffs, | **COMPLAINT** |
| | **Jury Trial Demanded** |
| v. | |
| Roseau River Watershed District, and Carter Diesen, Jim Johnson, Jason Braaten, Cody Schmalz, and LaVerne Voll, in their individual capacities and in their official capacities as members of the Board of Managers of Roseau River Watershed District, | |
| Defendants. | |

Plaintiffs Terry Kveen ("Terry"), as Trustee of the Terry G. and Carol L. Kveen Revocable Trust (the "Terry Kveen Trust"), and Norman Kveen ("Norman"), as Trustee of the Kveen Joint Revocable Trust ("Norman Kveen Trust") (collectively, "Plaintiffs"), by and through the undersigned attorneys, allege upon their own knowledge and otherwise upon information and belief, as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs bring this action for recovery of damages and other relief against Defendant Roseau River Watershed District (the "District") and the members of its Board

123047415.4 0105023-00003

of Managers (the "Board Members" [1]) on account of their violations of Plaintiffs' constitutional due process rights under the Fourteenth and Fifth Amendments of the U.S. Constitution, 42 U.S.C. § 1983, and Article I of the Minnesota Constitution, as well as for their conversion, trespass, and nuisance related to Plaintiffs' property interests.

2.      Through the actions and decisions of its Board Members, the District—without Plaintiffs' permission or approval and without affording Plaintiffs any adequate or meaningful due process—caused its contractors to unlawfully enter and occupy agricultural properties ("Kveen Properties") in Roseau County, Minnesota that, respectively, Terry owns through the Terry Kveen Trust and Norman owns through the Norman Kveen Trust.

3.      Over the course of several weeks, the District's contractors destroyed an embankment along a drainage channel that has existed on the Kveen Properties for decades and removed massive amounts of soil from the Kveen Properties.

4.      In doing so, the District and its Board Members failed to follow required petition procedures and failed to afford Plaintiffs adequate due process to challenge the District's conduct.

5.      To that end, Plaintiffs seek redress for the constitutional violations and other misconduct by the District and its Board Members.

---

[1] As used herein, "Board Members" collectively refers to Defendants Carter Diesen, Jim Johnson, Jason Braaten, Cody Schmalz, and LaVerne Voll, in their individual capacities and in their official capacities as members of the Board of Managers of Roseau River Watershed District.

123047415.4 0105023-00003

**THE PARTIES**

6.      Terry is a citizen of the United States, a Wisconsin resident, and a trustee of the Terry Kveen Trust.  The Terry Kveen Trust owns fee title to property located in Roseau County, Minnesota, including property at Township 163 North, Range 40 West, Section 31.

7.      Norman is a citizen of the United States, a Wisconsin resident, and a trustee of the Norman Kveen Trust.  The Norman Kveen Trust owns fee title to property located in Roseau County, Minnesota, including property at Township 163 North, Range 40 West, Section 31.

8.      The District is a local government unit created and existing under the laws of the State of Minnesota.  Within its borders, the District is authorized by Minnesota state statute to, *inter alia*, repair, improve, relocate, modify, consolidate, and abandon all or part of drainage systems.  *See, e.g.*, Minn. Stat. §§ 103D.201 and 103E.011.

9.      The District acts through the decisions of its Board of Managers, which is the governing body responsible for, *inter alia*, determining the District's actions and setting the District's policies and procedures.

10.      The Kveen Properties are located within the District's borders and the District is the relevant drainage authority for the area where the Kveen Properties are located.

11.      Defendant Carter Diesen ("Diesen") is, upon information and belief, a United States citizen and a Minnesota resident.  He serves as the chair and as a voting member of the District's Board of Managers.  Diesen, in his individual and official capacities, acted

3

123047415.4 0105023-00003

under color of law to determine, implement, maintain, and carry out decisions and actions through the District that violated Plaintiffs' constitutional, statutory, and common law rights.

12.    Defendant Jim Johnson ("Johnson") is, upon information and belief, a United States citizen and a Minnesota resident. He serves as the vice-chair and as a voting member of the District's Board of Managers. Johnson, in his individual and official capacities, acted under color of law to determine, implement, maintain, and carry out decisions and actions through the District that violated Plaintiffs' constitutional, statutory, and common law rights.

13.    Defendant Jason Braaten ("Braaten") is, upon information and belief, a United States citizen and a Minnesota resident. He serves as the treasurer and as a voting member of the District's Board of Managers. Braaten, in his individual and official capacities, acted under color of law to determine, implement, maintain, and carry out decisions and actions through the District that violated Plaintiffs' constitutional, statutory, and common law rights.

14.    Defendant Cody Schmalz ("Schmalz") is, upon information and belief, a United States citizen and a Minnesota resident. He serves as a voting member of the District's Board of Managers. Schmalz, in his individual and official capacities, acted under color of law to determine, implement, maintain, and carry out decisions and actions through the District that violated Plaintiffs' constitutional, statutory, and common law rights.

4

15. Defendant LaVerne Voll ("Voll") is, upon information and belief, a resident of Roseau County, Minnesota. He serves as the secretary and as a voting member of the District's Board of Managers. Voll, in his individual and official capacities, acted under color of law to determine, implement, maintain, and carry out decisions and actions through the District that violated Plaintiffs' constitutional, statutory, and common law rights.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the subject matter of this action pursuant to, *inter alia*, 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988.

17. Venue is proper in this Court pursuant to, *inter alia*, 28 U.S.C. § 1391 because the District and the Board Members are located in Minnesota and because a substantial part of the events giving rise to the claims in this matter occurred in Minnesota.

18. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to, *inter alia*, 28 U.S.C. § 1367 because the state law claims are related to Plaintiffs' federal claims and form part of the same case or controversy.

## FACTUAL BACKGROUND

### The Kveen Family Builds An Embankment On The Kveen Properties

19. Terry and Norman's family has owned land in Roseau County, including the Kveen Properties, for generations.

20. From the time they were children in the 1940s and 1950s, Terry—who is now 81 years old—and Norman—who is now 82 years old—grew up watching their grandfather and great-uncles farm the family's land, including the Kveen Properties.

5

21.   As part of working the family's land, Terry recalls from his childhood observing his family members constructing an embankment on part of the Kveen Properties that included a drainage ditch.

22.   The drainage ditch—sometimes referred to as the "Cutoff Channel"—was dug in the early 1900s and runs on a straight line east to west, connecting on each end to the Roseau River, alternatively known as State Ditch 51 ("SD 51").

23.   The Cutoff Channel and the relevant Kveen Properties are depicted in the illustration below:



24.   In the 1910s, the Kveen family built the embankment along the Cutoff Channel using soil from Kveen family's land, including the Kveen Properties.

123047415.4 0105023-00003

25. In the 1950s, the Kveen family widened the embankment so that two vehicles could fit across it.

26. In total, the embankment along the Cutoff Channel spanned more than two miles in length, extending from the Kveen Properties through adjacent properties owned by others.

27. The purpose of the embankment built by the Kveen family was to prevent regular, frequent, and permanent flooding of their farmland from the Cutoff Channel.

28. Indeed, for decades, the District took no action regarding the embankment that the Kveen family built, and the District and its Board Members did little to nothing to inspect, maintain, or repair the embankment.

29. Rather, the Kveen family took sole responsibility for the embankment, without any involvement by the District.

30. Eventually, Terry and Norman, along with other family members, took over the farm operation that includes the Kveen Properties.

31. Today, in their respective capacities as trustees of the Terry Kveen Trust and Norman Kveen Trust, Terry and Norman own the Kveen Properties, including the embankment, and lease the farmland.

### The District Conceives The Roseau Lake Rehabilitation Project

32. The relevant Kveen Properties are located in the vicinity of an area known as Roseau Lake.

33. Roseau Lake is an historic basin that was drained in or around 1914 when the Roseau River was channelized and a series of drainage ditches were constructed for

7

agricultural purposes; since that time, Roseau Lake has functioned as a lake only in periods of flood and otherwise stays dry.

34.   Beginning in the early 2010s, the District—together with the Minnesota Department of Natural Resources ("MN DNR")—conceived of a plan that came to be known as the Roseau Lake Rehabilitation Project ("Project").

35.   In 2014, the District's Board of Managers convened a project team to advance planning and eventual execution of the Project.

36.   Broadly, the stated purpose of the Project was to modify how existing flood storage volume within the Roseau River ditch system is used during flood events in order to reduce flood damage.

37.   To achieve this, the Project would, in general, alter flows through the Roseau River ditch system to the Roseau Lake basin and establish a water level management regime so as to reserve capacity in the basin and reduce peak flows through the Roseau River.

**The District Commissions An Engineer's Report For The Project**

38.   In 2019, an engineering firm called HDR, Inc. completed a final engineer's report ("Engineer's Report") that the District had commissioned for the Project.

39.   A true and accurate copy of the Engineer's Report is attached hereto as Exhibit 1.

40.   The Engineer's Report set forth various alternative design proposals and suggested a variety of changes to the ditch system and landscape in and around the Roseau Lake basin and the Roseau River to accomplish the Project's purported objectives.

123047415.4 0105023-00003

41.     Those changes included, *inter alia*, installation of a diversion structure where the east end of the Cutoff Channel adjacent to the Kveen Properties meets the Roseau River, and construction of various weirs, which are small barriers or dams built across a channel to control or raise upstream water levels, throughout the Project area.

42.     The Engineer's Report included a section that entitled "Land Ownership, Land Use, and Right of Way."  That section includes Figure 24, which depicts private land adjacent to the Cutoff Channel to the north and the south, including the Kveen Properties.[2]

43.     The Engineer's Report also included a section that referenced "Potential Borrow Sources" from which the Project could obtain soil to use for constructing the various Project features.[3]

44.     The Engineer's Report set forth two criteria for selecting potential borrow sources: First, the borrow source should be "located within the [P]roject footprint," and, second, the maximum hauling distance would be one mile.[4]

45.     Further, the Engineer's Report emphasized that "[u]ltimately, borrow sources will be chosen by the DNR, [the District], and willing landowners."[5]

46.     None of the design proposals offered in the Engineer's Report considered, evaluated, investigated, or analyzed removal of the embankment on the Kveen Properties along the Cutoff Channel.

---

[2] Ex. 1 at PL_00000064-65.

[3] *Id*. at PL_00000075-76.

[4] *Id*.

[5] *Id*. (emphasis in original).

9

47.   None of the design proposals offered in the Engineer's Report considered, evaluated, investigated, or analyzed the potential environmental or other impacts that could be caused by removal of the embankment on the Kveen Properties along the Cutoff Channel.

48.   Indeed, the Engineer's Report contains no specific information whatsoever about the embankment on the Kveen Properties along the Cutoff Channel.

**The MN DNR Completes An Environmental Assessment Worksheet**

49.   Thereafter, in or around November 2020, the MN DNR, in further collaboration with the District, completed an Environmental Assessment Worksheet ("EAW") as part of the approval process for the Project.

50.   A true and accurate copy of the EAW is attached hereto as Exhibit 2.

51.   The EAW was informed, to a large degree, by the Engineer's Report.

52.   Specifically, the EAW's analysis focused on the Project design proposal described as "Alternative 2A" in the Engineer's Report, since the District's board initially elected to move forward that proposal.

53.   The EAW included Figure 4, as set forth below, which depicted the Project components:

10

123047415.4 0105023-00003



54.    Figure 4 identifies the Cutoff Channel—described as the "Roseau River Diversion Channel"—in maroon, with a green square representing the "Roseau River Diversion Channel Structure" to be built as part of the Project.[6]

55.    Figure 4 did not illustrate any work to be done to the Cutoff Channel itself, the private land adjacent to the Cutoff Channel, or on the Kveen Properties.

56.    The EAW also included Table 1, which described the "work sites" within the Project area.[7]

---

[6] Ex. 2 at PL_00000239.
[7] *Id*. at PL_00000181-181.

123047415.4 0105023-00003

57.     Table 1 did not identify the Cutoff Channel, any private land adjacent to the Cutoff Channel, or the Kveen Properties themselves as "work sites."

58.     As part of listing the permits and approvals needed for the Project, the EAW noted that "[e]asements or fee title purchase are necessary on parcels of private land to complete the project."[8]

59.     With respect to land use, however, the EAW stated: "Land use may change where embankments and associated ditches are placed, but generally, lands within the footprint of the project will remain unchanged."[9]

60.     Like the Engineer's Report, the EAW also addressed the borrow sources from which soil would be taken for use in constructing various Project components.

61.     The EAW cited the same criteria as the Engineer's Report for selecting borrow sources and stated that they would be "chosen by the contractor, willing landowners, and ultimately according to the Geotechnical Exploration Report completed in 2017."[10]

62.     In describing borrow sources for the Project, the EAW referenced Figure 17, set forth below, which depicted the potential borrow sources on a map of the Project area:

---

[8] *Id*. at PL_00000198.
[9] *Id*. at PL_00000200.
[10] *Id*. at PL_00000202.

12

123047415.4 0105023-00003



63.    The Kveen Properties were not identified on Figure 17 as a potential borrow source.[11]

64.    The Geotechnical Exploration Report ("Geotechnical Report") referenced by the EAW was completed by Terracon Consultants, Inc. ("Terracon") and attached as Appendix B to the Engineer's Report.[12]

---

[11] *Id*. at PL_00000252.
[12] Ex. 1 at PL_00000118.

123047415.4 0105023-00003

65.   In preparing the Geotechnical Report, Terracon performed several soil borings and laboratory tests to assess the subsurface conditions and suitability of potential borrow sources.

66.   None of the soil boring sites studied by Terracon in the Geotechnical Report were located on the Kveen Properties.

67.   The EAW did not consider, evaluate, investigate, or analyze the removal of the embankment on the Kveen Properties along the Cutoff Channel.

68.   The EAW did not consider, evaluate, investigate, or analyze the potential environmental or other impacts that could be caused by removal of the embankment on the Kveen Properties along the Cutoff Channel.

69.   Indeed, the EAW contains no specific information whatsoever about the embankment on the Kveen Properties along the Cutoff Channel.

70.   The EAW was filed with the Minnesota Environmental Quality Board ("EQB") for review in December 2020.

**The District's Board Resolves To Change Course On Design Proposals**

71.   After submission of the EAW to the EQB, the District's board approved a resolution in January 2021 by which it elected to proceed with the design proposal identified as "Alternative 1" in the Engineer's Report, instead of the previously chosen "Alternative 2A."

72.   Thereafter, MN DNR was required to consider the EAW, along with comments received in response to the EAW during a public review and comment period,

14

and to make a Record of Decision ("ROD") on the need, if any, for an environmental impact statement ("EIS") for the Project.

73.     A true and accurate copy of the ROD is attached hereto as Exhibit 3.

74.     In its ROD for the Project, MN DNR considered, *inter alia*, modifications in the "Alternative 1" design proposal as compared to the "Alternative 2A" design proposal without requiring a new EAW to be prepared.

75.     The list of design modifications between the two alternatives is set forth at Paragraph 17 of the ROD, which specifically states that there was "no change" to the Project as it concerned the "cutoff channel structure."

76.     Likewise, the ROD neither identifies nor analyzes any changes that would be made between the two alternatives as to potential borrow sources or the need to secure easements or fee title from willing private landowners.

77.     The ROD did not consider, evaluate, investigate, or analyze the removal of the embankment on the Kveen Properties along the Cutoff Channel.

78.     Indeed, the ROD contains no specific information whatsoever about the embankment on the Kveen Properties along the Cutoff Channel.

79.     In August 2021, MN DNR issued the ROD, which concluded that an EIS was not required for the Project.

80.     Following issuance of the ROD, the District proceeded to, *inter alia*, obtain other permits and approvals, authorize completion of additional engineering work for the Project, and solicit bids for construction of the Project.

123047415.4 0105023-00003

**Landowners And Others Lodge Objections And Voice Opposition To The Project**

81.    Numerous parties with interests in the area in and near the Project site—including members of the Kveen family and adjacent landowners—lodged objections to the Project at various times.

82.    Notwithstanding landowner objections and opposition, however, the District's Board of Managers chose to move forward with the Project.

83.    Landowner opposition to the Project continued as the Project progressed toward construction.

84.    At the July 2022 meeting of the District's Board of Managers, for example, the board was questioned about landowner requests for improvements south of the Roseau River in the Roseau Lake area.

85.    According to the minutes from that meeting, Diesen—the District's board chairman—"stated that when the board chose to move forward with the alternative north of the river (Alternative 1), any work that proceeded on the south side would be outside of the scope of the project."

86.    Further, minutes from that July 2022 meeting of the District's Board of Managers reflect that "[t]here was extensive discussion on the effects of the project on lands on the south side of the river as well as the requests of the landowners, mainly culverts being replaced with new culverts and traps on the south side of the cutoff."

87.    Ultimately, however, according to the minutes from that meeting, "there has been no board action on proceeding with developing those requests or an approved funding source for that work."

123047415.4 0105023-00003

88.     The relevant Kveen Properties are located on the south side of the Roseau River.

89.     The representations by Diesen and the other Board Members that work on the south side of the Roseau River is outside the scope of the Project is further reflected in a document entitled "Alternative 1 Project Features," produced by the District's engineering firm HDR and endorsed by the District.

90.     A true and accurate copy of the Alternative 1 Project Features document is attached hereto as Exhibit 4.

91.     As indicated below, the Alternative 1 Project Features document identifies work to be performed on the north side of the Roseau River, and prominently features designated "borrow areas," all of which are located on the north side of the Roseau River:



92.     The Alternative 1 Project Features document identifies no "borrow areas" on the south side of the Roseau River.

93.     The Kveen Properties were not identified as designated "borrow areas" on the Alternative 1 Project Features document.

94.     Indeed, the District and the Board Members were aware that the Kveen Properties—including the Cutoff Channel—are privately owned, and the District and the Board Members did not identify the Kveen Properties as ones in which acquisition of fee title or an easement was necessary for the Project, as set forth in its Land Easements and Acquisition map:



18

123047415.4 0105023-00003

95.    A true and accurate copy of the Land Easements and Acquisition map document is attached hereto as Exhibit 5.

**Project Construction Begins And The District Decides To Remove The Embankment On The Kveen Properties**

96.    In the first half of 2023, the District and the Board Members considered proposals for the first phase of construction of the Project.

97.    That first phase of construction included work on the diversion structure where the Roseau River meets the Cutoff Channel, as well as other work sites within the Project scope.

98.    In 2023, the District and the Board Members reviewed plans and accepted bids for what was characterized as the "SD 51 Cutoff 1" project as part of the overall Project.

99.    In doing so, the District and the Board Members did not notify Plaintiffs that the District intended to remove a substantial portion of the embankment on the Kveen Properties, either as part of the SD 51 Cutoff 1 project or as part of the Project.

100.   In any event, the District—through the Board Members—approved work to do exactly that.

**The District Unlawfully Destroys The Embankment On The Kveen Properties**

101.   Indeed, in October 2023, without valid prior notice or opportunity to be heard, a construction company contracted by District through decisions and actions by the Board Members entered the Kveen Properties with large earth-moving vehicles, as shown in the photo below:

19



102.    At the direction of the District and as decided by the Board Members, the District's contractor dismantled and destroyed a large section of the embankment on the Kveen Properties—the same embankment that the Kveen family had built decades ago—and removed the soil comprising the embankment.

103.    On October 12, 2023, while this work was occurring, members of the Kveen family sent an email to the District's inbox and to the District's attorney that stated: "We demand that you stop removing soil/fill from our property immediately."

104.    The Kveen family's email pointed out that there is no recorded easement in favor of the District that would allow for removal of the embankment.

105.    The Kveen family's email further stated: "We will pursue further action regarding the theft of our soil, and trespassing.  No permission was ever given to enter our land or remove fill."

123047415.4 0105023-00003

106.    A true and accurate copy of the Kveen family's email is attached hereto as Exhibit 6.

107.    Altogether, upon information and belief, the District's contractor removed approximately 120 truckloads of soil from the Kveen Properties and completely destroyed a section of the embankment spanning approximately a quarter-mile in length (*i.e.*, approximately 450 yards).

108.    At the November 2023 meeting of the District's Board of Managers, Matt Magnusson ("Magnusson")—an individual whose family owns land along the Cutoff Channel immediately to the west of the Kveen Properties—voiced concerns over the District's unauthorized and unpermitted removal of the embankment on the Kveen Properties as part of the SD51 Cutoff 1 project and the overall Project.

109.    According to the November 2023 meeting minutes, the District's attorney stated that "due to threatened litigation, the board would not be responding to Mr. Magnusson at the meeting . . . but would take his concerns under advisement."

**The District Mischaracterizes Its Misconduct And Misstates The Law**

110.    In February 2024, the District's administrator replied in writing to the concerns raised by Magnusson about the District's unauthorized and unpermitted removal of the embankment on the Kveen Properties.

111.    A true and accurate copy of the February 2024 letter from the District's administrator to Magnusson is attached hereto as Exhibit 7.

112.    The District's administrator mischaracterized the embankment as "spoil from the dredging of State Ditch 51 (SD51)" and stated that the "[t]he material that was utilized

21

in the weir construction project [*sic*] was acquired from that spoil / borrow area, within the SD51 right-of-way, and therefore, was accessible for use in the construction of the project."

113. As set forth above, "State Ditch 51" and "SD51" are alternative references to the Roseau River, including the Cutoff Channel the runs through the Kveen Properties.

114. The communication from the District's administrator managed to fit numerous factual mischaracterizations and misstatements of law into a very short statement.

115. First, the embankment on the Kveen Properties was not "spoil" from dredging the Cutoff Channel; the Kveen family built the embankment on the Kveen Properties decades ago with its own soil and through its own labor.

116. Second, the District has never purchased a right-of-way easement from the Kveen family and does not own a right-of-way easement on the Kveen Properties.

117. Indeed, the District has neither identified nor produced a copy of any right-of-way easement it purports to own on the Kveen Properties.

118. Third, even if the District did own a right-of-way easement—it does not—such an easement would only grant the District permission to pass over or go across the Kveen Properties within the limited area of the Cutoff Channel.

119. A right-of-way easement does not grant permission to, for example, remove soil from a private landowner's property or unilaterally level an embankment, as the District did on the Kveen Properties through the actions and decisions by its Board Members.

123047415.4 0105023-00003

120. Fourth, while the District may have something akin to an implied easement to inspect, maintain, and repair a drainage ditch within its jurisdiction—like the Cutoff Channel—Minnesota law divides such work into two categories: non-petitioned repairs and petitioned repairs.

121. Non-petitioned repairs are ones that are brought to the attention of a drainage authority by an inspection and written report pursuant to Minn. Stat. § 103E.705.

122. Non-petitioned repairs include routine maintenance and minor repair work, such as removing vegetation and sediment deposits, and cleaning and replacing culverts.

123. Upon information and belief, the District commissioned no inspection or written report under Minn. Stat. § 103E.705 that identified destruction and removal of the embankment on the Kveen Properties as a necessary non-petitioned repair.

124. Indeed, the District's work in destroying and removing the embankment on the Kveen Properties would not qualify as a non-petitioned repair under Minnesota law.

125. Petitioned repairs, on the other hand, are any repair or improvement projects that fall outside the scope of non-petitioned repairs.

126. The process that a drainage authority—such as the District—must follow in order to perform a petitioned repair is set forth in Minn. Stat. § 103E.715.

127. Minn. Stat. § 103E.715, Subd. 6 specifically identifies "leveling spoil banks" as a type of petitioned repair.

128. To complete a petitioned repair pursuant to Minn. Stat. § 103E.715, "[a]n individual or entity interested in or affect by the drainage system" must first file a petition identifying the requested repair with the relevant drainage authority.

123047415.4 0105023-00003

129.   If the drainage authority determines that the petitioned repair is needed, it must then appoint an engineer to examine the drainage system and make a repair report.

130.   The repair report must show the estimated cost, along with all details, plans, and specifications necessary to prepare and award a contract for the petitioned repair.

131.   The drainage authority must then set a hearing on the repair report.

132.   At least 10 days before the hearing, the drainage authority must give notice by mail of the time and location of the hearing to, *inter alia*, owners of properties affected by the petitioned repair.

133.   The drainage authority must then make findings and order the petitioned repair to proceed based on the factors set forth in Minn. Stat. § 103E.715, Subd. 4.

134.   For petitioned repairs that involve leveling a spoil bank, a drainage authority must follow additional procedures under Minn. Stat. § 103E.715, Subd. 6.

135.   Specifically, Minn. Stat. § 103E.715, Subd. 6 provides that the drainage authority "must appoint viewers to assess and report on damages and benefits if it determines that," *inter alia*, any spoil bank leveling "will require the taking of any property not contemplated and included in the proceeding for the establishment or subsequent improvement of the drainage system."

136.   In that event, the viewers must assess and report damages and benefits caused by the petitioned repair; the drainage authority must hear and determine damages and benefits caused by the petitioned repair; damages must be paid as part of the cost of repair; and benefits must be assigned as part of a previously determined pro rata assessment by the drainage authority.

123047415.4 0105023-00003

137.   Moreover, in all instances, a party—such as an affected landowner—has a right to appeal a drainage authority's order on, *inter alia*, a petitioned repair or a determination of damages and benefits to a state district court within the relevant jurisdiction.

138.   With respect to the District's unpermitted work to destroy the embankment on and remove soil from the Kveen Properties—and even if the work qualified as "spoil bank leveling," which it did not—the District and its Board Members followed none of the required procedures under Minn. Stat. § 103E.715.

139.   Specifically, the District and its Board Members:

   a.   Did not file or respond to a petition that identified the work as a petitioned repair;

   b.   Did not have an engineer's repair report prepared;

   c.   Did not schedule a hearing on an engineer's repair report;

   d.   Did not provide notice of a hearing to Plaintiffs or other affected landowners;

   e.   Did not make findings on the need for the work;

   f.   Did not issue an order for the work to proceed on the basis of such findings;

   g.   Did not make a determination as to any property that may be taken as part of the work;

   h.   Did not appoint viewers to consider damages and benefits caused by the work;

25

123047415.4 0105023-00003

i.     Did not hold a hearing to determine damages and benefits caused by the work;

j.     Did not pay damages to affected landowners;

k.     Did not assess benefits to affected landowners; and

l.     Did not allow for an opportunity to appeal by Plaintiffs or other affected landowners as to either the petitioned repair itself or any determinations of damages and benefits.

140.   Fifth, the District's administrator was patently incorrect in her statement that the embankment on the Kveen Properties was "accessible for use in the construction of the project," *i.e.*, the Project.

141.   None of the relevant Project documents—*e.g.*, the Engineer's Report, the EAW, the ROD—identified the embankment on the Kveen Properties as a "borrow area."

142.   And none of the relevant Project documents identified the embankment on the Kveen Properties as a "spoil bank" that required leveling.

143.   Finally, in removing soil from the Kveen Properties to use for the Project, the District failed to follow the criteria set forth in the Engineer's Report and the EAW for determining borrow sources.

144.   Specifically, as noted in both the Engineer's Report and the EAW, such borrow sources were only to come from areas within the Project footprint and in cooperation with *willing* landowners.

26

123047415.4 0105023-00003

145.    The Kveen Properties are outside the Project footprint, since they are located to the south of the Roseau River; indeed, Diesen—the District's board chairman—publicly acknowledged that land to the south of the Roseau River is not within the Project area.

146.    And Plaintiffs did not willingly allow the District to remove soil and destroy the embankment on the Kveen Properties for use as a borrow source in the Project.

147.    Further, by unlawfully destroying the embankment on the Kveen Properties, the District performed work outside the scope of the Project, and, without permission or authorization, the District thus performed work outside the scope of the Engineer's Report, the EAW, and the ROD.

## VIOLATIONS ALLEGED

### COUNT ONE
**Violations of 42 U.S.C. § 1983; Fourteenth Amendment**
**Unlawful Deprivation of Property In Violation of Procedural Due Process Rights**

148.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

149.    The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

150.    Included within these constitutional protections are the rights to notice and hearing when an individual is deprived of his fundamental property interests.

151.    Pursuant to, *inter alia*, 42 U.S.C. § 1983, federal law further provides that any person acting under color of state law who deprives any other person of rights secured by the U.S. Constitution shall be liable to the injured party.

27

152. The District and the Board Members qualify as persons acting under color of state law.

153. Plaintiffs own protected property interests in the Kveen Properties, including, *inter alia*, the embankment on the Kveen Properties adjacent to the Cutoff Channel.

154. The decisions by the District through the Board Members to destroy the embankment on and remove soil from the Kveen Properties involved a deliberate choice to follow a course of action made by the District and the Board Members, who have final authority to establish governmental policy.

155. To that end, the decisions by the District through its Board Members to destroy the embankment on and remove soil from the Kveen Properties were official acts capable of subjecting the District and the Board Members to liability for federal constitutional violations.

156. The misconduct by the District and the Board Members in, *inter alia*, destroying the embankment and removing soil from the Kveen Properties constitutes a substantial deprivation of Plaintiffs' protected property interests.

157. Plaintiffs received no due process of law with respect to the deprivation of their protected property interests caused by the District and the Board Members.

158. There was no meaningful process or procedural protections for Plaintiffs with respect to the misconduct by the District and the Board Members in, *inter alia*, destroying the embankment and removing soil from the Kveen Properties.

28

159. The District and the Board Members failed to follow required process and procedural steps with respect to their misconduct in, *inter alia*, destroying the embankment and removing soil from the Kveen Properties.

160. Plaintiffs were not provided notice regarding the District's work on the Kveen Properties to, *inter alia*, destroy the embankment and remove soil from the Kveen Properties.

161. Plaintiffs were not provided an opportunity for a hearing regarding the District's work on the Kveen Properties to, *inter alia*, destroy the embankment and remove soil from the Kveen Property.

162. Plaintiffs were not provided any appeal right regarding the District's work on the Kveen Properties to, *inter alia*, destroy the embankment and remove soil from the Kveen Properties.

163. The District and the Board Members thus violated Plaintiffs' due process rights and deprived Plaintiffs of their protected property interest in violation of the U.S. Constitution.

164. As a result of the unlawful conduct by the District and the Board Members, Plaintiffs have suffered damages and continue to suffer damages, the exact amount of which will be determined at trial.

**COUNT TWO**
**Violations of 42 U.S.C. § 1983; Fourteenth Amendment**
**Unlawful Deprivation of Property In Violation of Substantive Due Process Rights**

165. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

123047415.4 0105023-00003

166.   Pursuant to, *inter alia*, 42 U.S.C. § 1983, federal law further provides that any person acting under color of state law who deprives any other person of rights secured by the U.S. Constitution shall be liable to the injured party.

167.   The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

168.   Included within these constitutional protections are the rights to notice and hearing when an individual is deprived of his fundamental property interests.

169.   The District and the Board Members qualify as persons acting under color of state law.

170.   As alleged above, Plaintiffs own protected property interests in the Kveen Properties, including, *inter alia*, the embankment on the Kveen Properties adjacent to the Cutoff Channel.

171.   The decisions by the District and the Board Members to destroy the embankment on and remove soil from the Kveen Properties involved a deliberate choice to follow a course of action by the District and the Board Members, who have final authority to establish governmental policy.

172.   To that end, the decisions by the District through the Board Members to destroy the embankment on and remove soil from the Kveen Properties were official acts capable of subjecting the District and the Board Members to liability for federal constitutional violations.

173.   The misconduct by the District and the Board Members in, *inter alia*, destroying the embankment and removing soil from the Kveen Properties constitutes a

30

substantial deprivation of Plaintiffs' protected property interests and evinces deliberate injurious intent, shocks the conscience, and interferes with the rights implicit in the concept of ordered liberty.

174. The District and the Board Members thus violated Plaintiffs' due process rights and deprived Plaintiffs of their protected property interest in violation of the U.S. Constitution.

175. As a result of the unlawful conduct by the District and the Board Members, Plaintiffs have suffered damages and continues to suffer damages, the exact amount of which will be determined at trial.

**COUNT THREE**
**Violations of 42 U.S.C. § 1983; Fifth Amendment and Fourteenth Amendment**
**Unlawful Taking Without Just Compensation**

176. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

177. The Takings and Just Compensation Clause of the Fifth Amendment to the U.S. Constitution prohibits the taking of private property for public use without payment of just compensation.

178. Through the Fourteenth Amendment to the U.S. Constitution, the prohibition against taking private property without just compensation under the Fifth Amendment applies to the State of Minnesota and its political subdivisions, including local government authorities like the District.

123047415.4 0105023-00003

179.   Federal law further provides that any person acting under color of state law who deprives any other person of rights secured by the U.S. Constitution shall be liable to the injured party.

180.   The misconduct by the District and the Board Members in, *inter alia*, destroying the embankment and removing soil from the Kveen Properties resulted in an unlawful taking of the Kveen Properties for which the District has not justly compensated Plaintiffs.

181.   The District and the Board Members failed to follow required process and procedural steps with respect to its misconduct in, *inter alia*, unlawfully taking the Kveen Properties.

182.   Plaintiffs were not provided notice regarding the District's unlawful taking of the Kveen Properties.

183.   Plaintiffs were not provided an opportunity for a hearing regarding the District's unlawful taking of the Kveen Properties.

184.   Plaintiffs were not provided any appeal right regarding the District's unlawful taking of the Kveen Properties.

185.   The District's taking of the Kveen Properties deprived Plaintiffs of their protected due process rights and violated the Fifth Amendment and Fourteenth Amendment to the U.S. Constitution.

186.   The District and the Board Members thus violated Plaintiffs' due process rights and unlawfully took Plaintiffs' property for a public purpose and without paying just compensation in violation of the U.S. Constitution.

123047415.4 0105023-00003

187.   As a result of the unlawful conduct by the District and the Board Members, Plaintiffs have suffered damages and continue to suffer damages, the exact amount of which will be determined at trial.

**COUNT FOUR**
**Declaratory Judgment Pursuant to 28 U.S.C. § 2201**
**Violations of the Due Process Clause of the Minnesota Constitution**

188.   Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

189.   Article I, Section 7 of the Minnesota Constitution provides that "[n]o person shall . . . be deprived of life, liberty or property without due process of law."

190.   The due process protections guaranteed by the Minnesota Constitution are coextensive with those guaranteed by the U.S. Constitution.

191.   As alleged above, Plaintiffs own protected property interests in the Kveen Properties, including, *inter alia*, the embankment on the Kveen Properties adjacent to the Cutoff Channel.

192.   The misconduct by the District and the Board Members in, *inter alia*, destroying the embankment and removing soil from the Kveen Property constitutes a substantial deprivation of Plaintiffs' protected property interests.

193.   Plaintiffs received no due process of law with respect to the deprivation of their protected property interests by the District and the Board Members.

194.   The District and the Board Members thus violated Plaintiffs' due process rights and deprived Plaintiffs of their protected property interest in violation of the Minnesota Constitution.

33

195.   Article I, Section 8 of the Minnesota Constitution provides that "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character."

196.   To that end, Plaintiffs are entitled to a remedy for the violations of the Minnesota Constitution by the District and the Board Members, including, but not limited to, compensatory damages and injunctive or other equitable relief.

197.   As a result of the unlawful conduct by the District and the Board Members, Plaintiffs have suffered damages and continue to suffer damages, the exact amount of which will be determined at trial.

198.   Because an actual controversy exists as to the violations of the Minnesota Constitution by the District and the Board Members, Plaintiffs are accordingly entitled to a declaration of their rights and remedies pursuant 28 U.S.C. § 2201.

## COUNT FIVE
### Conversion

199.   Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

200.   The soil comprising the embankment on the Kveen Properties, once severed from Plaintiffs' realty, constituted personal property belonging to Plaintiffs.

201.   By removing the soil comprising the embankment on the Kveen Properties without permission, authorization, or lawful justification, the District and the Board Members wrongfully exercised dominion or control over Plaintiffs' personal property in defiance of Plaintiffs' rights.

34

123047415.4 0105023-00003

202.    As a result of the unlawful conduct by the District and the Board Members, Plaintiffs have suffered damages and continue to suffer damages, the exact amount of which will be determined at trial.

## COUNT SIX
**Trespass**

203.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

204.    Plaintiffs have a right of possession to the Kveen Properties.

205.    In destroying the embankment and removing soil from the Kveen Properties, the District and the Board Members wrongfully, unlawfully, and intentionally entered or caused entry upon the Kveen Properties.

206.    The wrongful, unlawful, and intentional entry upon the Kveen Properties by the District and the Board Members interfered with Plaintiffs' right to exclusive possession of the Kveen Properties.

207.    As a result of the unlawful conduct by the District and the Board Members, Plaintiffs have suffered damages and continue to suffer damages, the exact amount of which will be determined at trial.

## COUNT SEVEN
**Nuisance**

208.    Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if set forth fully herein.

209.    Plaintiffs have a right of possession to the Kveen Properties.

123047415.4 0105023-00003

210.   In destroying the embankment and removing soil from the Kveen Properties, the District and the Board Members unlawfully obstructed Plaintiffs' free use of the Kveen Properties and unlawfully interfered with Plaintiffs' use and enjoyment of the Kveen Properties.

211.   The actions by the District and the Board Members thus constituted a nuisance.

212.   As a result of the unlawful conduct by the District and the Board Members, Plaintiffs have suffered damages and continue to suffer damages, the exact amount of which will be determined at trial.

213.   Plaintiffs are also entitled to an order of the Court enjoining the nuisance caused by the District and the Board Members, pursuant to Minn. Stat. § 561.01.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment:

A.   Finding the District and the Board Members liable on all causes of action set forth herein;

B.   Finding that the District and the Board Members violated the U.S. Constitution by their destruction of the embankment on and removal of soil from the Kveen Properties;

C.   Declaring that the District and the Board Members violated the Minnesota Constitution by their destruction of the embankment on and removal of soil from the Kveen Properties;

36

D.      Enjoining the District and the Board Members to immediately and permanently restore the embankment on and return the soil to the Kveen Properties;

E.      Awarding Plaintiffs actual and compensatory damages, including direct, incidental, and consequential damages, in amounts to be proven at trial;

F.      Awarding Plaintiffs pre- and post-judgment interest, costs, and disbursements;

G.      Awarding attorneys' fees and costs to Plaintiffs for this action pursuant to, *inter alia*, 42 U.S.C. § 1988 and Article I, Section 8 of the Minnesota Constitution; and

H.      Granting Plaintiffs such other and further relief as this Court deems just and equitable.

**JURY TRIAL DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  June 27, 2024                    **STOEL RIVES LLP**

By:  *s/Andrew J. Pieper*
    Andrew J. Pieper (#0389262)
    Brea L. Khawja (#0403634)
    33 S Sixth Street, Suite 4200
    Minneapolis, MN  55402
    Telephone:  612.373.8800
    Facsimile:  612.373.8881
    andrew.pieper@stoel.com
    brea.khwaja@stoel.com

*ATTORNEYS FOR PLAINTIFFS*

123047415.4 0105023-00003